IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JORDAN THOMAS,
 Plaintiff,

v.

BALTIMORE POLICE DEPARTMENT, et al.,
 Defendants.

CIVIL ACTION NO.: 1:26- CV- 01682- MJM

# June 12th, 2026, reporting Plaintiff has been transferred out of hostile workplace, but to questionable location.

USDC- BALTIMORE
'26 JUN 15 AM9:14

On June 12th, 2026, at approximately 1709 hours, Plaintiff Officer Jordan Thomas checked his departmental email and observed that an HRO (Human Resource Order) was published. Plaintiff observed that on Page 2 of the HRO (will be attached and highlighted to this document), he was listed as being transferred out of the Southern District, which was his place of assignment up until this point, to TRU (Telephone Reporting Unit) effective June 14th, 2026. Plaintiff finds that this transfer is questionable, as it was not one of the units he requested to go to. Plaintiff maintains that as reported before, he has placed three separate transfers to Western District, Eastern District, and Juvenile Booking. Plaintiff maintains that he placed in a transfer for Juvenile Booking on March 11th, 2026, and both of his transfers for Western and Eastern District on April 29th, 2026. The Plaintiff did not place a transfer request to TRU. Plaintiff advises that per the HRO, that this transfer is not temporary, as it is listed under "Transfers", and not a "detail". (When Defendant BPD moves personnel via HRO orders, but the move is meant to be temporary, it is specifically classified on the HRO as either a "detail", or a "special provisional transfer"). Members who are detailed or transferred under special provisions do not "put in" transfer requests to leave. Details and special provisions are almost always involuntary movements that the member did not ask for. Plaintiff advises that this is important because the Defendant permanently transferred him to this  assignment he did not request, making it an involuntary transfer, especially since per the HRO, this movement was not classified as a temporary detail or special provisional transfer. Plaintiff was not given any formal notice of the change of environment and only knows about the transfer because he checked his email on his own accord and noticed the move. It is standard practice in the workplace that members who are being moved to other parts of the agency are given reporting instructions by either their old



Rcv'd by: _____

command or new command. Plaintiff reached out to union representative Sgt. John Glazerman on the same day about the matter and inquired about it, to which Plaintiff was given a reiterated statement by Sgt. Glazerman where it was stated the Defendant would not transfer Plaintiff to another District due to his suspension status. However, no explanation was given as to whether or not / why Plaintiff could not be moved to Juvenile Booking, which was an environment that the Plaintiff has stated before was a familiar and productive space for him to work. An environment that Plaintiff has explained to the Defendants and multiple other people in the past that he would be successful in. An environment that Plaintiff told the Health and Wellness Section of BPD on April 3rd, 2026, during an early intervention in the presence of Health and Wellness members and Plaintiff's chain of command that he is comfortable and would strive in. The only explanation that Plaintiff was ever offered was that in March of 2026, Defendant Major Henerietta Middleton told Plaintiff that he was not allowed to be transferred to that unit since it "did not post for being in need of staff" and later statements by Sgt. Glazerman on May 12th, 2026, that Defendant BPD advised him that due to Plaintiff's suspension, he cannot be transferred. Plaintiff maintains that these statements are not true, and that suspended members can indeed be transferred to other parts of the agency without those parts posting that they need staff, Juvenile Booking included. This was proven on June 12th, 2026 in of itself as Plaintiff was transferred to TRU, while suspended (albeit, without placing a transfer to the unit).

Plaintiff believes that this transfer from the Southern District to TRU, while at first glance, especially with the explanation given by Sgt. Glazerman (as seen in the text exchange between him and Plaintiff which will be attached to this document) appears to be favorable to Plaintiff since the goal of having him moved away from the hostile work environment was achieved. However, Plaintiff believes that this transfer was deliberately done by Defendant BPD to cause more harm to Plaintiff. Firstly, the fact that this transfer occurred 3 months after Plaintiff's original transfer was made to Juvenile Booking and over 1 month since his transfer requests to Western and Eastern Districts, is negligent due to the fact that as a result of those/any transfers at all not happening in a timely fashion, caused Plaintiff to be subjected to more workplace harassment as outlined in this lawsuit. Secondly, part of Plaintiff's argument is that due to the suspension having taken place, he has been unable to work any Overtime shifts while suspended, still only having worked one single Overtime shift since he has been suspended, also partly due to the fact that the supervisor in charge of the Overtime, Sgt. Chaneeka Brooks, has failed to accommodate Plaintiff's formal and informal requests for Overtime. TRU is a unit in which its members are not authorized to work Overtime at all. Meaning that at the very least, even though Plaintiff was not being given Overtime opportunities at the Southern District, being assigned to the Southern District meant he would still technically be assigned to an assignment where he is authorized to obtain Overtime. This also would have been the case if Plaintiff's transfer requests for Juvenile Booking, Eastern, and/or Western District were approved. Now, assigned to TRU, which again, Plaintiff did not ask to be assigned to, Plaintiff is in an assignment where its members are not authorized to work Overtime. Plaintiff believes this was done deliberately so

any chance at him being able to work Overtime is completely voided. Plaintiff believes that this was deliberate since again, Plaintiff did not put in a transfer to that unit, and because not being able to work Overtime as a direct result of the Actions of Defendants Sgt. Yolanda Brown, Major Henrietta Middleton, and overall Defendant BPD, was mentioned in Plaintiff's lawsuit, filed on April 29th, 2026, therefore leading Plaintiff to believe the transfer to TRU was done out of spite/retaliation.

Plaintiff advises that while he was never, at this time, advised he was denied transfer to one of the three locations he asked for due to the locations being full of staff, Plaintiff wishes to preemptively advise that if a claim is made by Defendant that Juvenile Booking was full of staff at the time of his transfer, that BPD has since transferred five suspended members of equal rank to Plaintiff from various parts of the agency to Juvenile Booking, and has had one member retire, meaning there was space for 5 suspended members to be transferred, and 1 space vacant by a member of Juvenile Booking who retired. All of those movements occurred well after Plaintiff placed his transfer request to Juvenile Booking and this further adds to Plaintiff's argument that the BPD neglected his transfer request, meaning 5 suspended members were transferred to that unit when it already is full of staff while Plaintiff continued to suffer the consequences of the BPD's poor handling of his situation in its entirety. Therefore, an excuse cannot be made by any Defendants that Juvenile Booking was "full" at the time of his request for transfer should that excuse come up at some point during any defense. Plaintiff maintains that even if there was a legitimate overstaffing concern at Juvenile Booking, that Defendant BPD still should have moved Plaintiff to either Western or Eastern District as he asked as those requests would be more realistic as those two Districts, or any District for that matter, always has anywhere between 1-3 staff members working their front desks anyways due to those members being on the District front desks for varieties of reasons, i.e. medical, disciplinary, or administrative suspensions. Even if for whatever reason transfer to either Eastern or Western Districts were also impossible for the reason of overstaffing, there were still several other Districts that the Plaintiff could have been transferred to that he did not ask for, especially since he was transferred to TRU without asking to go there either. The BPD offered no communication or discretion to Plaintiff before the transfer was made, and BPD made their own decision against Plaintiff's reasonable requests for no good apparent reason.

This, once again, leads Plaintiff to believe that this transfer was not only not what he requested, but also negligently delayed by a significant amount of time, which caused him to be subjected to more workplace harassment which could have been avoided, and for at least 5 spots at the assignment he originally requested to be taken, and that the transfer to the specific unit of TRU was retaliatory for the Plaintiff's lawsuit itself since at TRU, Plaintiff is not allowed to work Overtime.

It should also be noted, that in reference to the supplementary document that Plaintiff submitted on June 11th, 2026, that on this same HRO prompting this new supplement, Sgt. Yolanda Brown's transfer from Southern District to Juvenile Booking was present. Plaintiff wishes again to preemptively counter a defense that the BPD may make, possibly that Plaintiff was moved to TRU instead of Juvenile Booking since Sgt. Brown was moved down there, causing a conflict in the workplace. Plaintiff maintains that his transfer to Juvenile Booking was placed on March 11th, 2026, well before a supervisory opening at that unit even became available. Plaintiff should have been moved to Juvenile Booking first upon his request due to the at-the-time growing issues he was having at the workplace, and even more so after he was granted a right to sue letter by the Federal EEOC in March of 2026, and then his lawsuit became widely known to his workplace due to the lawsuit making the news in April of 2026.  Plaintiff also feels it is worth questioning Defendant of the timing of the release of this HRO, as it was released only a day after Plaintiff went to the Court Clerk and submitted the supplement questioning the circumstances of Sgt. Brown's transfer and how it was not announced prior.

As stated above, page 2 the HRO will be attached to this supplement. Page 5 will also be attached since it has the Police Commissioner's signature on it.  Also attached to this supplement, will be the text conversation that Plaintiff had on June 12th, 2026 with Sgt. Glazerman where the circumstances as to Plaintiff's transfer is guessed upon by Sgt. Glazerman, and how after Plaintiff questioned him further about the revocation hearing, and his possible reinstatement, he was ignored by Sgt. Glazerman, further demonstrating the unwillingness of BPD's resources for its employees to take matters of the employees seriously. This is not the first time Plaintiff has been ignored/never received answers back from entities within BPD including the union, and Sgt. Glazerman himself.

Respectfully Submitted,

Jordan Thomas

3000 Falls rd
305
Baltimore MD 21211